By the Court. Campbell, J.
The defendants moved for a nonsuit on the trial, and now claim that the same should be granted, because the alleged contract given in evidence was signed only by Carrigan, and did not bind the plaintiff, and was merely an offer to sell; that it was void for want of consideration, and is not a sufficient memorandum within the statute of frauds; that without extrinsic evidence it was not the contract of Carrigan, but of Buckman; that, admitting it to be the contract of Carrigan, the plaintiff could not recover, because he had not shown he was ready and willing to receive the coal and perform on his part before the 28th of October, when it was too late; that the plaintiff was bound to give notice before the 1st day of August of the place where he would receive the coal, and that there was no default until such notice was given; —at all events, that he was bound to give such notice before the 1st of each month as to all the coal to be delivered in that month, and there was no evidence of any such notice.
The objection that the memorandum was insufficient under the statute, we incline to think is not well taken. The contract is not a mere proposal, and is mutual on its face, since the price stipulated to be paid for the coal is a sufficient consideration for the promise to deliver it. Had the memorandum been expressly assented to and signed by the plaintiff, there can be no doubt but he would have been bound, and a contract sufficiently clear, and with an adequate consideration expressed, would have been made out.
It was contended, that the mere receipt by the plaintiff of the agreement, or the acceptance of it by him, was alone sufficient to make it operative and binding upon both parties. This may well be doubted; but, admitting the proposition to be correct, the material and vital question remains to be considered—namely, whether notice ought not to have been given by the plaintiff to Carrigan of the time and place, when and where, he wished the coal to be delivered. As the city of *284 Hew York was the residence of the plaintiff, it is a presumption of law that it was contempfated that- the coal was to be delivered ,in this city; but at what wharves or piers the delivery was to be made could not be known to C¿irrigan, without notice from the plaintiff, and this notice, by a reasonable construction of ‘his contract, w.e think he was bound to give. The promise of Carrigan was to deliver the coal at such piers as the plaintiff should direct; and until this direction was given—in other words, until the piers were designated by a previous notice—we ■ do not see how the obligation to deliver could arise or attach. Various reasons might be given tending to show why it might be important to Carrigan to know in'advance the precise point to which vessels or barges laden with this coal should be taken on their arrival at this port. But whether the information was, or was not, important to be given, the terms of his agreement required it to be given, and, until it was received, imposed upon -him no obligation to act. The only proof relied on to show that the proper notice was given was that of a conversation between plaintiff and Buckman, who had made the contract, and which the witness thinks was in one of the months' of August, September, or October, but is not certain as to which. It does nót appear that Buckman was. Carrigan’s agent for the delivery of this coal, and, if he had been, this notice was too late. The contract was to deliver in about equal quantities in each month, and the agreement was signed on the 16th April, three and a half months before any coal was to be delivered. The contract was entire, and a fulfilment of it required the delivery of the thousand tons, in about equal quantities, in each of the months of August, September, and October. The notice required should, at all events, have been given a sufficient time before the month of August, so as to have enabled Carrigan to comply with the delivery of the one6third in that mOhth. But as each party was to take the chance of a rise and fall of the market, the plaintiff could not be compelled to take or Carri- ’ gan to deliver the' whole coal in any one month, nor any part thereof, unless in about equal quantities in each month. On the 28th of October, three days before the time fixed for the last delivery, the plaintiff incloses to Carrigan a copy of the *285 contract, and demands its fulfilment. It would seem from the letter of Carrigan put in evidence by the plaintiff, that this was the first notice which he had received, and that he had come to the conclusion—and a very reasonable one under the circumstances—that the plaintiff did not want the coal, and had abandoned the contract. It was not necessary for plaintiff to have proved on the trial his readiness and willingness to pay for the coal, because by the very terms of the agreement he had an election of a credit for three months. He proved that he was a coal dealer, and had a coal-yard in the city of New York at the time, and this probably is sufficient evidence of his readiness to receive it, had he given the requisite notice. But it is said that the plaintiff was under no obligation to give notice to Carrigan at what piers he would receive the coal, until Carrigan had the coal ready, and requested such information, and that it was Carrigan’s duty to seek the plaintiff and ask his directions. The cases of La Farge v. Rickert (5 Wend. 181) and Lusk v. Druse (4 Wend. 317) are relied upon. They establish this proposition only—that, when a party has a duty to discharge or an obligation to perform, then he must seek the person to whom the duty or obligation is due, when no place is fixed for its performance, and make a tender. The tenant who has rent to pay, or the obligee in a bond, if no place of payment is named, must seek the landlord or the obligor at his usual residence. There is no analogy between those cases- and the present. If Carrigan had wished to charge the plaintiff on the supposition that he, the plaintiff, was bound by the contract to accept the coal, it would have been probably necessary for Carrigan to have sought out the plaintiff, and asked his directions, and to have offered to deliver the coal. But this admission does not at all affect the truth of the proposition, that in order to put Carrigan in default by creating an obligation on his part to deliver the coal, a designation by a previous notice of the places at which the delivery should be made, was indispensable; the giving this notice was a condition precedent, the fulfilment of" which the plaintiff was bound to prove. No proof of the fact was given on the trial that in our judgment could properly be submitted to the jury, and consequently the motion for a non- *286 suit then made ought to have been granted. According to the reservation in the case, we have power to grant it now? and we accordingly direct that a judgment of nonsuit, with costs to the defendants, be now entered.