McCunn, J.
(dissenting.) In-this case, I regret to say, after having given it a careful and anxious consideration, I am unable to agree with the opinion pronounced at general term. That the defendants are clearly liable under the contract, I have not the shadow of a doubt.
The principal question in the case is, whether the memorandum or contract signed by the defendants is sufficient in law to bind them.
The facts are as follows : The defendants made an agreement with the plaintiff to furnish him with 1000 Enfield rifles, and thereupon entered into a contract, and signed the following memorandum of the same :
*349 “ New York, May 13th, 1861.
We agree to deliver P. S. Justice one thousand Enfield Pattern Rifles (with bayonets, no other extras) in New York, at #18 each, cash upon such delivery, said rifles to be shipped from Liverpool not later than 1st of July, and before if possible.
(Signed)
W. Bailey Lang & Co.”
Which agreement and-memorandum were accepted by the plaintiff. After the contract was entered into, the article increased largely in value, and the defendant neglected and refused to supply the rifles, whereupon this action was brought.
I will remark here, that in looking carefully into all the evidence, I am constrained to the belief that the only reason which influenced the defendants in refusing to perform the contract was that the rifles had nearly doubled in value from the time the contract was made until the time they were to be delivered. .After the testimony was nearly closed, a motion was made to dismiss the complaint, upon the ground that there was no consideration passing in the contract, and “ that the contract was a mere nudum pactumThe motion was granted. Notwithstanding this, I am satisfied, after a careful examination of the statute, and of all the American and English authorities on the subject, there was error in dismissing the complaint. The contract, as stated above, was a full compliance with the requirements of the statute, and upon the facts presented, the plaintiff was entitled to recover. It will be conceded that before the passage of the statute of frauds, a verbal contract between parties for any amount whatever was good. This being so, the statute simply altered the common law in this respect, that it merely requires for greater certainty that a memorandum of the contract should be made in writing.
It is admitted that the form of the memorandum of the contract in this case, so far as words are concerned, is all that is required. The defendants simply contend that there is no *350 mutuality, because the plaintiff did not sign a duplicate of the memorandum. This, in my opinion, was of no consequence.
The defendants and the plaintiff made and entered into the contract; the one agreed to sell at a fixed and certain price, and the other to buy at that price. This was the mutuality, and the consideration expressed was the $18 per rifle. The defendants reduced the contract to writing, or made a note of the same, and signed and handed- it to the plaintiff, who accepted it, and this was all that was required to complete the transaction, and if the defendants did not demand a duplicate of the memorandum signed by the plaintiff, it was their own fault; but without this, the defendants, if they had delivered the rifles, could not recover in an action of assumpsit. (See Gridley v. Gridley, 24 N. Y. Rep. 130.)
The mere acceptance of the note or memorandum, in writing, of the contract by the plaintiff, was enough to bind him, and was sufficient to enable the defendants, in a court of law, to compel a- performance on his part. The law, in all cases, implies a promise to pay where it is the duty of one to pay; and no one will doubt for a moment that if the defendants had made and tendered the rifles, the plaintiff would have been compelled to pay. In the case of Gridley v. Gridley, above cited, Mr. Justice Davies, in one of the most clear and forcible opinions in our books, lays down the principle that where a party accepts a written obligation from another, although he does not subscribe the same, yet in a court of law he can be held responsible for the performance of its conditions, and such was declared to be the rule in the following cases : Spraker v. Van Alstyne, (18 Wend. 200;) McLachlan v. McLachlan, (9 Paige, 534;) Van Orden v. Van Orden, (10 John. 30 ;) Lord v. Lord, (22 John. R. 60.) Indeed, the cases are too numerous to cite, which fully establish this doctrine, and sustain my conclusion.
In construing a statute, it is our duty to ascertain the true legal import of the words used by the legislature, and to collect the intention from the language of the statute itself; but *351 not to make out the intention from some other source of information, and thus interpret the words of the act, so as to meet the assumed intention.
The danger of traveling out of the statute, and looking elsewhere for the object of the legislature, may be illustrated by the wide difference of opinion entertained by the members of this court in the present case. In order to know what a statute does mean, it is one important step to ascertain what it does not mean, and what it forbids must be consistent with what it permits.
Now, the act says : “A note or memorandum of such contract must be made in writing, subscribed by the parties to be charged thereby.” It does not say all the parties to the contract must subscribe the memorandum, and that it must be signed in duplicate ; it simply says subscribed by the parties to be charged with doing the work or furnishing the goods ; in other words, the vendor.
There is a stronger reason than any that has been urged, showing this to be the proper construction of the statute. In 1835, the question came up in the legislature, when other amendments were being made to the old statute of frauds, as to whether the words in the statute, to wit, “ the parties to be charged thereby,” should be amended, so as to include the names of all parties to the contract, and that body rejected the proposed amendment, assigning as a reason that by virtue of the old act and the adjudications thereunder, all the parties to the transaction had a complete remedy without such alterations. (See reviser’s notes. 3 R. S. 656, 2d ed.) It is clear, therefore, that these words must now be taken in their fixed and adjudicated sense, and that they absolutely mean that the statute should be satisfied when the parties to be charged therewith signed the memorandum. And this interpretation is supported in reason and in equity. The contract is binding on both parties, because the promise on the one side to sell at a certain fixed price, and of the other to buy at such price, is the mutual consideration for each other, and the statute only requires that a note or memorandum of the contract must be *352 in writing; it does not say, and does not mean that it shall be signed in duplicate by all the parties to the contract.
Moreover, a party should not be allowed to take advantage of his own neglect in not getting and retaining a copy of the contract.
After the original act was passed, I will show hereafter that a construction was given it, and that construction has been strictly followed to this day. It is the construction that naturally presents itself at once to the mind, and under it, all parties have a perfect remedy.
How, if this be so, and there is not a single authority to the contrary, why unsettle the law at this day, and that to no-purpose, and for no cause. On a careful examination of all the authorities from the time of the passage of the original act, it will be seen that the courts, both in England and America, have uniformly held that when a memorandum of a contract is committed to writing, and signed by the party to be charged thereby, and accepted by the other, this is entirely sufficient.
Precedent serves to illustrate principles, and give them a fixed authority. We must respectfully regard the authorities of prior adjudications, which form in themselves an established rule, and when they violate no principle; We must discriminate the actual grounds of decisions from any casual observations that accompany them, because these observations form no decisive resolution, no adjudication, no professed or deliberate determination. In the case of Davis v. Shields, disposed of in the Court of Errors of this state, in 1841, both the Chancellor and Mr. Senator Verplanck laid down the doctrine “ that the name of the party to be charged therewith was only requisite to the note or memorandum.” Indeed, Senator Yerplanck, in one of the most clear and forcible arguments I have ever had the pleasure of examining, establishes this doctrine beyond a doubt, and this rule was re-renunciated in the Court of Appeals of this state, in the case of Worrall v. Munn, (5 N. Y. Rep. 229,) where Mr. Justice Paige says: “that it is only necessary the memorandum should be signed by the vendor, *353 the party to be charged therewith.” In Dykers v. Townsend, (24 N. Y. Rep. 57,) a side remark of Judge Hoyt, a mere obiter dictum, and not intended as law, is cited as indicating that he entertained a contrary opinion. He says : “ As an original question he would have no hesitation in saying in a case, where a contract is executory, that it was necessary it should be in writing under the statute, and be signed by both parties thereto,” but in another and latter part of his opinion, he takes all this back, and lays down the law after this clear manner.
“ In this case, a note or memorandum of the contract was made in writing, and signed by the defendant, and we think that this was a sufficient compliance with the statute according to the settled construction which has been given to it.” Now, after this candid avowal of the law on that point, it cannot be fairly said the question involved, and now under consideration, did not "come up in that case. It did come up, and was settled by a unanimous bench, and the views I entertain are correct.
The next case our attention is called to is that of Bailey v. Ogden, (3 John. 399,) a case in no way similar to the one at bar. That was a case where the plaintiff, the vendor, made an entry in his own books of the sale, of which entry the defendant, the vendee, knew nothing. But even in that case, Kent, chief justice, lays down the principle “ that it is only necessary for the party to be charged to sign the contract.” The case of Laurenson v. Butler, (1 Schoale & Lefroy, 201,) has no resemblance whatever to the case under discussion. That was a case of a mistaken contract about a lease, and the court held that a performance could not be compelled because there was a mistake as to the power to sell, and the plaintiff knew of the mistake before he accepted the contract'. In the case of Roget and Barrett, I do not agree with the defendant’s counsel in saying that this question was' passed without adjudication. On the contrary, the question came fairly up, and was fully discussed and passed upon, and in my view, that decision settles the law in this case in favor of the plaintiff. In announcing the opinion of the court in that case, Mr. Jus *354 tice Spencer lays down the rule that only the parties to be charged are required to sign the memorandum, and he remarks that if there are acts to be done by both parties (such as the exchange of commodities to be manufactured,) there is no doubt but that such contract would be obligatory, if signed by one party and accepted by. the other. The case of Clason v. Bailey, fully corroborates the views I entertain in this respect. In that case, the chancellor, in announcing the opinion of the , Court of Errors, cites numerous English and American authorities, all clearly establishing the fact that a memorandum, signed by one party, and accepted by the other, is sufficient under the statute.
In the case of Russell v. Nicholl, (3 Wend. 118,) before referred to, that most learned and able judge, Marcy, lays down a similar doctrine to the one I entertain, and this clear principle can be no better illustrated than by the exposition of that eminent judge.
“ It was insisted,” says Governor Marcy, “ that the contract declared on was, within the statute of frauds, void, for not being reduced to writing, and signed as the statute directs. This objection is not sustainable. It is very clear that the signing by the defendants is a compliance with the statute.”
The case of Chater v. Beckett, (7 Term Rep. 203,) is not at all a case in point. The agreement in that case was by parol. It is true, however, that some remarks were made by Lord Kenyon, not only not bearing on this case, but entirely foreign to the record, and which decide nothing. The last, and only remaining case cited by counsel for the defendant is that of Ballard v. Walker, (3 John. Ca. 60,) which confirms my views in this case.
The question under consideration should not demand of me so much care and attention, especially since we find two cases in this very court, precisely similar, where similar memoranda were sued upon, and- where this court were unanimous in sustainiqg the old and well established rule, that it was only necessary for the parties to be charged thereby to sign the memorandum. I refer to Fenley v. Stewart, (5 Sandf. *355 101;) and also to the case of West v. Newton, (1 Duer, 277.) The memorandum in the first case was as follows :
“ For a valuable consideration to us in hand paid, we have sold A. H. Fenly two thousand five hundred bushels of canal oats, at forty-five cents per bushel of thirty two quarts ; to be delivered in this city at any time, at our option, between the 1st and 15th of June next ; to be cash on delivery.
New York, April 23,1847.
A. W. Otis & Co.”
The presiding justice, delivering the unanimous opinion of the court, employs this language :.
“ The statute of frauds requires not that the contract should be signed by both parties, but the parties to be charged thereby; and the uniform construction has been that the signature by the defendants alone, that is, by the parties sought to be charged, is sufficient to sustain the action. This construction has proceeded, not on the ground that contracts need not be mutual, but that the statute in certain enumerated cases has taken away the power of enforcing contracts, which would otherwise be mutually binding, unless the parties against whom they are sought to be enforced have subscribed some note or memorandum thereof in writing.” * * * It necessarily follows, however, from the provision of the statute, that all inquiry as to whether or not a contract was originally mutual is immaterial. It may be enforced against the party who has subscribed a note or memorandum of it, though the other party, by not having signed, is by the express words of the statute freed from its obligation. The objection, therefore, of want of mutuality is not well taken.
In the case of West v. Newton, (1 Duer, 277,) the following contract was sued on :
“ I do hereby agree to deliver to J. Selby West, at such places as he shall direct, during the months of August, September and October next, in about equal quantities each month, five hundred tons of egg end five hundred tons of good size stove coal, best quality of red ash, peach orchard, at five dollars per ton, cash, or interest added, after delivery, as he shall *356 prefer ; the above coal to be in good order and gross tons, credit not to be over three months.
Morris Buckman.
Mew York, April 16,1846.
Agent for Jacob Carrigan, Jr.”
The presiding justice in delivering the unanimous opinion of the court says : “ The objection that the memorandum was insufficient under the statute, we incline to think is not well taken. The contract is not a mere proposal, but is mutual on its face, since the price stipulated to be paid for the coal is a sufficient consideration for the promise to deliver it.”
Mow can there be two cases more in point than these, especially when we find the contracts and the facts precisely the same as in this case, and they do not, unreversed as they are, settle the law so far as this court is concerned ; especially, when we remember that at that day the court was honored by the presence of an Oakley, a Duer and a Sandford, and when we consider the further fact that the only lights or adjudications the court have now to guide them in their deliberations .are precisely the same lights and the same adjudications the judges of that day enjoyed.
The judgment of dismissal should be reversed and a new trial ordered, with costs.
Judgment and order affirmed.