PHILIP S. JUSTICE, Appellant, v. WILLIAM B. LANG and GEORGE M. WHEELER, Respondents.

At common law, accepting from a party his written agreement to deliver goods at a specified price, "cash upon such delivery," implied a promise to pay the price when the goods should be delivered, which furnished sufficient consideration for the agreement to deliver, and rendered the contract valid and binding.

The signing such an instrument by a vendor takes the contract out of the statute of frauds and binds him, although it is not subscribed by the vendee.

The object of the statute is to compel the production of written evidence of the terms of the contract, against the party sought to be charged thereon.

It is not essential to the liability of the party sought to be charged, that there be mutuality of obligation; and the fact that the contract may not be enforceable against one party, because not subscribed by him, is no defence to the other, by whom it is subscribed. Consideration is necessary, but mutuality of obligation is not.

Accordingly, the defendants having subscribed and delivered to the plaintiff the following memorandum:

"NEW YORK, 13*th May*, 1851.

"We agree to deliver P. S. Justice, one thousand Enfield pattern rifles, with bayonets, no other extras, in New York, at eighteen dollars each, cash upon such delivery; said rifles to be shipped from Liverpool not later than July first, and before, if possible.

"W. BAILEY LANG & Co."

*Held*, that this was a valid instrument, binding them to deliver the rifles according to its terms.

Comyn's definition of the six essentials to a simple contract, viz.: "1st. A person able to contract. 2d. A person able to be contracted with. 3d. A thing to be contracted for. 4th. A good and sufficient consideration, or *quid pro quo*. 5th. Clear and explicit words to express the contract or agreement. 6th. The assent of both the contracting parties." Approved by LOTT, J.

(Argued in 1869, and reargument ordered; reargued March 28th, 1870; and decided June 23d, 1870.)

APPEAL from a judgment entered upon the decision of the General Term of the Superior Court of the city of New York, affirming a judgment dismissing the complaint upon the trial of the issues before Justice BARBOUR, and a jury.

The facts material to the decision sufficiently appear in the opinion of the court.

*Edmund Terry*, for the appellant, on the question of the validity of the contract under the statute of frauds, cited *Classon* v. *Bailey* (14 Johns., 490); *Roget* v. *Merritt* (2 Cai., 117); *Bullard* v. *Walker* (3 Johns. cas., 60); *McCrea* v. *Purmort* (16 Wend., 460); 2 Stor. Eq. Jur., § 736*a; in re Hunter*,

(1 Edw. Ch., 1); *White* v. *Schuyler* (1 Abb. N. S., 300); *Muller* v. *Vettel* (25 How., 350); *Davis* v. *Shields* (26 Wend., 349); *Barslen* v. *Gray* (3 Greenl., 409); *Perriman* v. *Hartshorne* (13 Mass., 87); *Hawkins* v. *Chace* (19 Pick., 502); *Anderson* v. *Harold* (10 Ohio, 399); *Farly* v. *Stewart* (5 Sandf., 101); *West* v. *Newton* (1 Duer, 277); *Allen* v. *Bennet* (3 Taunt., 149); *Shirley* v. *Shirley* (7 Blackf., 452); *Douglas* v. *Spears* (2 N. & McC., 207); Reviser's Notes, 5th Edmond Stat. at Large, 396; *Saunderson* v. *Jackson* (2 Bos. & Pul., 238); *Russell* v. *Nicol* (3 Wend., 118); *Bailey* v. *Ogden* (3 Johns., 412); *Dykers* v. *Townsend* (24 N. Y., 50); *Worrall* v. *Munn* (1 Seld., 229). That it was not necessary for the plaintiff to aver or prove tender of performance, he cited *White* v. *Demilt* (2 Hall, 405); *Porter* v. *Rose* (12 J. R., 212); *West* v. *Emmons* (5 J. R., 179); *Dana* v. *Fiedler* (2 Kern., 40); *Ransom* v. *Johnson* (1 East, 203); *Waterhouse* v. *Skinner* (2 Bos. & Pul., 447).

*Samuel E. Lyon,* for the respondent, insisted that the memorandum must be signed by both parties, and that both must be bound by it, to make it obligatory upon the defendants; and that the plaintiff, not being bound to accept the rifles, the defendants' agreement was without consideration. He cited as illustrative of these positions from the opinions in *Brabin* v. *Hyde* (32 N. Y., 510); *Cooper* v. *Elston* (7 Tenn. R., 15); *Charles* v. *Beckett* (7 Tenn., 203). He also reviewed the decisions, in this State, claimed to hold a contrary doctrine.

LOTT, J.   The plaintiff brought this action for the recovery of damages from the defendants (composing the firm of W. Bailey Lang & Co.), for the non-performance of their promise, contained in the following memorandum or instrument in writing, signed by them, viz.:

"NEW YORK, 13*th May*, 1861.

"We agree to deliver P. S. Justice one thousand Enfield pattern rifles, with bayonets, no other extras, in New York

at eighteen dollars each, cash upon such delivery. Said rifles to be shipped from Liverpool not later than 1st July, and before if possible.

"W. BAILEY LANG & Co."

After proof of the negotiation of the parties, the execution of the instrument by the defendants, its acceptance by the plaintiff, and the introduction by him of other evidence to sustain his action, but without showing that a counterpart of the memorandum, or any instrument in writing whatever, was ever signed by him to accept the rifles, or pay for them, he rested his case. Then the counsel of the defendants, after the denial of a motion to dismiss the complaint, proceeded to examine witnesses on their part; and, after some testimony had been given (but which was afterward considered as stricken out), the judge stated that he much inclined to think that the memorandum was a *nudum pactum*, and, after referring to its contents, said: "It expresses no consideration, and there is no evidence tending to show that the proposed purchaser ever agreed to take the rifles or to pay for them;" and remarked that the admission of testimony offered to prove that the contract was obtained fraudulently, or by false representations, would be in the face of his impressions in regard to the contract itself; that if it was a mere *nudum pactum*, without consideration, it would be useless to prove any conversation in regard to it. He thereupon, on the grounds above stated by him, and on motion of the defendants' counsel, dismissed the complaint, and an exception to that decision was duly taken. The ground assigned by the learned judge for the dismissal of the complaint renders it necessary to examine into the validity of the contract at common law, as well as under the requirement of the statute of frauds.

Blackstone, in his Commentaries (vol. 2, page 422), defines a contract to be "an agreement upon sufficient consideration to do, or not to do a particular thing;" and he says the price, or motive of the contract, we call the consideration, (page 444). Kent's definition of an executory contract is an

agreement of two or more persons, upon sufficient considera
tion, to do or not to do a particular thing. (2 Kent's Com.,
page 449, &c.) Comyn, in his work on contracts (page 2), says :
A simple contract, or contract by parol, is defined in our law
books to be " a bargain or agreement voluntarily made upon
good consideration, between two or more persons capable of
contracting, to do, or forbear to do, some lawful act."    *    *
And " six things appear necessary to concur : 1st. A person
able to contract. 2d. A person able to be contracted with.
3d. A thing to be contracted for. 4th. A good and sufficient
consideration, or *quid pro quo.* 5th. Clear and explicit
words to express the contract or agreement. 6th. The assent
of both the contracting parties." He adds : " So, every con-
tract should be obligatory on both the contracting parties, or
both should be at liberty to recede therefrom ; but to an
agreement or contract there is no prescribed form of words,
but any words which show the assent of the parties is suffi-
cient." He also, in this connection, states that a voluntary
promise, without any other consideration than mere good will,
or natural affection, to give to another a sum of money, as for
instance, twenty pounds, and that he will be a debtor for
such sum, is no contract, but a mere *nudum pactum,* and that
the law will not compel the execution by a person of what
he had no visible inducement to engage for, but any degree
of reciprocity will prevent the agreement or promise from
being classed under this rule ; and he illustrates the distinc-
tion by saying, that in the instance or case put, if anything,
however trifling, were done, or to be done, or given for the
twenty pounds, it would be a valid contract, and binding
upon the parties.

Chitty says : " A contract or agreement not under seal,
may be thus defined or described. A mutual assent of two or
more persons competent to contract, founded on a sufficient
and legal motive, inducement, or consideration, to perform
some legal act, or to omit to do anything, the performance of
which is not enjoined by law. (Chitty on Contracts, p. 3.)

All of these definitions are substantially the same; and upon the application of that given by Comyn, which embraces the others, and appears to me to be a precise and explicit exposition of the necessary ingredients of a contract, to the memorandum in question, with his illustrations, it will be seen that it constitutes a sufficient and perfect agreement.

It shows that the plaintiff and the defendants were the contracting parties, the first as seller, and the last as purchaser; that the thing contracted for was Enfield pattern rifles; that a good and sufficient consideration, or *quid pro quo*, was expressed, being the delivery of such rifles to the defendant, at New York, on the payment by him to the plaintiff of eighteen dollars each, cash, upon such delivery. Clear and explicit words were used to express the terms of the contract and agreement, leaving no doubt as to the subject-matter thereof, the time and place for the delivery of the goods to be delivered, and the price or sum to be paid, and when such payment was to be made; and the assent of both the contracting parties also appears, that of the sellers, by subscribing their firm name at the end of the contract, and that of the buyer by the acceptance thereof. Although there is no distinct and express promise in terms by the plaintiff, to pay the price specified, the terms, "cash on delivery," imply a promise, and create an obligation to make such payment when the rifles are delivered.

I shall therefore assume that the contract was valid and binding on the defendants at common law; and, as I understand the prevailing opinion of the General Term, its validity as a common law agreement was conceded; and the affirmance of the judgment at the trial term was placed on the sole ground that it was void under the statute of frauds. (2 Rev. St., p. 136, &c.)

It will now be considered with reference to the requirements of that statute, which, so far as it applies to the sale of goods and chattels, declares that " every contract for the sale of any goods, chattels or things in action for the price of fifty

dollars or more, shall be void, unless, 1st. A note or memo-
randum of such contract be made in writing and be sub-
scribed by the parties to be charged thereby; or, 2d. Unless
the buyer shall accept and receive part of such goods or the
evidences, or some of them, of such things in action; or, 3d.
Unless the buyer shall, at the time, pay some part of the pur-
chase money." (2 Rev. St., p. 136, § 3.) And a subsequent
section (§ 8) declares that every instrument, by any of the pro-
visions of the title to be subscribed by any party, may be sub-
scribed by the lawful agent of such party.

This is substantially, so far as it affects this case, the same
as the fifteenth section of the former statute of frauds in this
State, entitled " an act for the prevention of frauds, passed
26th February, 1787." (1 Greenleaf's edition of the Laws,
vol. 1, 391, &c., and 1 Rev. Laws of 1813, vol. 1, p. 75.)
That section enacts " that no contract for the sale of any
goods, wares and merchandise, for the price of ten pounds or
upward, shall be allowed to be good, except the buyer shall
accept part of the goods so sold, and actually receive the same,
or give something in earnest to bind the bargain or in part
payment; or that some note or memorandum in writing of the
said bargain be made and signed by the parties to be charged
by such contract, or their agents thereunto lawfully author-
ized," and is in its terms a transcript of the seventeenth clause
of the English statute of frauds (29 Car., II, ch. 3) which Chan-
cellor KENT says " is assumed to be the basis of the several
statute laws of the several States on this subject." (2 Kent's
Com., p. 510.)

In this connection it may be useful to advert to the fact that
subdivision 1 of section 3 of the Rev. St., as above set forth,
is materially different from its provisions as reported to the
legislature by the revisers. Those were in the following
terms, viz.: " A note or memorandum of such contract, con-
taining the names of the parties, a description of the things
sold and the price thereof, be reduced to writing at the time
the contract is made, and be subscribed by all the parties
thereto." (See 3 Revisers' Notes in New York Statutes at

Large, Edmond's edition, vol. 5, p. 395.) The effect of the statute is to make additional requirements to what was required at common law to make a valid contract. They are specifically stated; and, so far as it relates to or affects the contract in question, are " that a note or memorandum of such contract be made in writing and be subscribed by the parties to be charged thereby."

It is claimed by the defendants, and it was so held by the General Term, that the omission of the plaintiff to subscribe the contract rendered it void, even as to the defendants, by whom it was subscribed, and consequently that it was wholly inoperative and ineffectual for any purpose or to any extent whatever. Is this the proper construction of the statutory provision?

In deciding this question it is important to consider the object of the statute. That is declared in the act of 26th February, 1787. It is entitled " An act for the prevention of frauds;" and after making several enactments, it enacts (as is stated in the beginning of section 9) " for the prevention of many fraudulent practices which are commonly endeavored to be upheld by perjury and subornation of perjury," several provisions, and, among others, the fifteenth section, above cited.

The present statute on the subject is confessedly for the same purpose. The enactment that every contract for the sale of any goods for the price of fifty dollars or more, where the buyer neither accepts or receives a part of them, nor at the time pays some part of the purchase-money, shall be *void* " unless a note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby," does not make such a contract *unlawful*, but its object is to declare that it shall be of no binding force to charge any party who has not subscribed a note or memorandum thereof in writing, with any liability thereon. It evidently contemplates legal proceedings against one of the parties to it, and its design is to prevent perjury and subornation of perjury, by refusing the aid of the law in the enforcement

of any rights claimed under it against him, without such written evidence.

The end and object of the statute are attained by written proof of the obligation of the defendant; he is the party to be charged with a liability, dependant on, and resulting from, the evidence, and he is intended to be protected against the dangers of false oral testimony. To say that the plaintiff or the party seeking to enforce a contract is himself a party to be *charged* therewith is a perversion of language.

The term "parties" in the section quoted is used in connection with the words "*to be charged* thereby," and does not necessarily include, nor can it be construed to include, *all* the parties to the contract. It is, on the contrary, limited and restricted, by the qualifying words, to such only of those parties as are to be bound or held chargeable and legally responsible on the contract, or on account of a liability created by or resulting from it.

If it had been intended to extend to, and include, all of the parties, those words "to be charged thereby" would have been unnecessary and superfluous. The appropriate language to express such intention would have been, that the note or memorandum should be subscribed "by all the parties thereto," or "by the parties thereto," or some general terms, without any limitation or restriction to any particular class or designation of parties.

The action of the legislature, moreover, when considered in connection with the recommendation of the revisers, is in harmony with and strongly confirmatory of this construction. That recommendation was, that the note or memorandum should be subscribed by *all the parties* thereto ; and if it had been adopted there would have been no room for doubting as to the intent of the requirement. So, on the other hand, the omission to make the change recommended, and the enactment of the provision by the continuance of the phraseology and terms, "the parties to be charged thereby," clearly indicate that the construction that had been given thereto in numerous cases, declaring that it was enough that the note or

memorandum of the contract be signed or subscribed by the party to be charged, was expressive of the true meaning of those terms.

The counsel for the respondent, however, in arguing that the memorandum must be subscribed *by both parties*, claims and insists that " an examination of the history of the question will show that no decisions to the contrary have been made in the court of last resort in this State, and that those which have been made to the contrary in other courts have not been well considered;" and in support of that proposition he refers to several reported cases where the question has been the subject of consideration, and it will be proper to examine them with the view of ascertaining whether he is sustained in the construction he has given to them or as to the effect to which they are entitled as authority. The first is that of *Raget* v. *Merritt* (2 Caine's Rep., 117), decided in 1804. It was an action for not delivering 220 barrels of flour according to agreement. It appeared that the defendant agreed to sell the flour, and a memorandum of the sale, made and signed by him, was delivered to the plaintiff's broker, who negotiated the sale for him. A note of one Lyon was to be given for the flour, but before it was tendered he failed. One of the objections taken to the recovery was, that the contract was void under the statute of frauds, because the memorandum or agreement was signed only by one party, and therefore, though obligatory on him, it could not be enforced against the plaintiff, and that this rendered the whole a mere *nudum pactum*. Judge SPENCER held the objection to be untenable, and said : " The statute of frauds requires, in certain contracts, a memorandum to be signed by the parties to be charged. If there are acts to be done by both parties, and the one who is to perform a principal part (as here, the delivery of the flour) sign, and it is accepted by the other party, there can exist no doubt but that such contract would be mutually obligatory. In this case, I hold that there was a valid contract executory in its nature ; but, before the period

of its execution arrived, the consideration agreed to be given by the plaintiff wholly failed by the insolvency of Lyon."

The question of the necessity of the execution or signing of the agreement by both parties thereto was involved in the case, and, although it is true that the judge said, before he made those remarks, that as the opinion he was about to give in deciding it was not founded on either of the objections taken (the other being as to a variance between the contract set forth in the declarations and the proof), it would be unnecessary to enter into a minute examination of them, yet what he did say in reference thereto, was, nevertheless, an authority on the question.

The next case was that of *Bailey & Bogert* v. *Ogden & Ogden* (3 John. Rep., 399), decided in 1808, which was an action of assumpsit by the plaintiffs for the price of a quantity of sugar, alleged to have been sold by them to the defendants through the agency of one Huguet, acting as a broker for them. An entry of the sale and the terms was made by one of the plaintiffs and kept by them, commencing " sold Huguet for J. Ogden & Co. notes, with approved indorser," and then stating some other terms, but not specifying the quantity of the sugar sold. It was read to Huguet, and there was evidence tending to prove that he said it was correct. He himself had on the previous day made an entry of the transaction in pencil in his own memorandum book, commencing " J. Ogden & Co.—Bailey & Bogert," stating some other particulars, but saying nothing about an indorsement; and he testified that he did not assent to that. The extent of Huguet's authority and some other matters were the subject of dispute on the trial. The judge, among other things, charged : " That a note or memorandum, to satisfy the statute of frauds, must contain the names of the parties and the terms of the contract; and that, if the names of the parties be inserted at the top, in the middle, or at the bottom, by their authority, it is sufficient;" and then, after adverting to the fact that there was but one special count on the contract, which averred a delivery and that averment must be proved, even if there had been a note or

memorandum within the statute, submitted it to the jury
to find whether there had been an absolute delivery to the
defendants and acceptance by them of the goods. They found
a verdict for the defendants.

A motion was made in the Supreme Court to set aside that
verdict and for a new trial. The counsel for the plaintiffs,
among other points, insisted that it was not necessary that
both parties should sign the note or memorandum of the con-
tract, citing *Roget* v. *Merritt* (*supra*), and *Saunderson* v.
*Jackson* (2 Bos. & Puller, 238), and that if there was a suffi-
cient memorandum in writing, proof of a delivery of the
goods was not required.

The counsel for the defendants, in reference to the suffi-
ciency of the note or memorandum, after referring to the lan-
guage of the statute, said that none of the authorities cited
by the plaintiffs' counsel applied to the case; that " when the
memorandum is signed by one party only it must be by the
party to be charged;" and argued that the " *bare assent* " of
the party to be charged was not equivalent to a signing.

KENT, Ch. J., in delivering the opinion of the court, stated
that the case depended on the decision of two general ques-
tions; one of which, and the first of them, was whether there
was a note or memorandum in writing, binding upon the
defendants, within the meaning of the statute of frauds; and
after referring to the memorandum made relative to the
transaction as above stated, he said: " The entry of the
plaintiffs, made and retained by them, was not binding upon
the defendants, because the statute requires the note or
memorandum to be signed by the party to be *charged.* The
numerous cases admitting an agreement to be valid within
the statute, if signed by one party only, are all of them cases
in which the agreement was signed by the party against
whom the performance was sought. Some of the cases arose
under the fourth and others under the seventeeth section of
the English statute, but the words are in this respect similar
and require the same construction.". He then, after remark·
ing that it had been said " that there would be a want of

mutuality, if the plaintiffs in the case were bound by the entry and the defendants would not be," says: "Whether the plaintiffs, in the present case, would be bound at law by their memorandum, or if bound, whether they might have relief in equity, are questions not before us, and concerning which we are not now to inquire;" and after an examination of the facts disclosed in the case, he came to the conclusion that there was no note or memorandum in writing which took the contract there relied on out of the statute of frauds, so far at least as it respected the defendants, nor a delivery or acceptance of the sugars, and that therefore the motion for a new trial should be denied.

This case, while it cannot be considered as an actual *authority* in support of the present action, is nevertheless important as recognizing the fact that there were numerous cases holding an agreement to be valid within the statute, if signed by one party only, when such party was the one against whom the performance was sought, and the remark of the learned chief justice, " whether the plaintiffs in that case were bound at law by their memorandum, or if bound, whether they might have relief in equity, were questions not then before the court, and concerning which they were not then bound to inquire;" was as consistent with a doubt or question as to the sufficiency of the memorandum to bind the plaintiffs, conceding it to have been signed by them, as it was in reference to their liability, if it had been so signed and was in other respects sufficient.

What was thus said can on no ground be considered as questioning the force or effect of the "numerous cases". referred to by him as authority.

The next case was that of *Merritt & Merritt* v. *Clason* (12 John Rep., 102), decided in 1815. There it appears that John Townsend, a broker, was employed by the defendant to purchase rye; that he, on application to Isaac Wright & Son, in New York, the agents of the plaintiffs, agreed to purchase of them 10,000 bushels at one dollar per bushel, and they authorized him to sell the same to the defendant on the terms agreed on; he then informed the defendant of the terms of

sale and was directed by him to make the purchase accordingly. Thereupon he went to Wright & Son and closed the bargain with them, as agents of the plaintiffs, and in their presence wrote in his memorandum book with a pencil as follows : " February 18th, bought of Daniel & Isaac Merritt by Isaac Wright & Son, 10,000 bushels of good merchantable rye, at one dollar per bushel, deliverable in the last ten or twelve days of April next, alongside of any vessel or wharf the purchaser may direct, for Isaac Clason of New York, payable on delivery." All the other memoranda in the same book were written with a lead pencil. Soon after the purchase was thus completed, the broker informed the defendant of it, but did not give him a copy of the memorandum. The plaintiffs repeatedly tendered the rye to the defendant, according to the terms of the agreement, and he refused to accept and pay for it. They then gave him notice that, unless he received and paid for the rye, they would, on a day and place specified, sell the same at public auction, and hold him accountable for the deficiency, in case it should sell for less than the price mentioned in the contract and the expenses. On his refusal to complete the purchase, the property was sold by the plaintiffs at public auction, pursuant to the notice ; and the suit was brought by them to recover the difference between the net proceeds of such sale and the contract price. A verdict was taken, subject to the opinion of the court, on a case containing the facts above stated, and which either party was to be at liberty to turn into a special verdict.

On the argument of the case in the Supreme Court, Mr. Baldwin, one of the counsel of the defendants, among other questions, raised the point, on the authority of *Champion* v *Plummer* (4 Bos. & Pull. [1 N. R.], 252), that a memorandum signed by the seller only was not sufficient; that the plaintiffs were not bound thereby, and if they were not, neither could the defendant be bound.

PLATT, J., in delivering the opinion of the court, stated that the only point was whether the memorandum, made by John Townsend, was a sufficient memorandum of the contract.

within the statute of frauds, to bind the defendant; and, after expressing an opinion on other questions presented by the case than that raised by Mr. Baldwin as above stated, as to which he said nothing, he came to the conclusion that the memorandum stated, with reasonable certainty, every essential part of the agreement, and that the plaintiffs were entitled to judgment.

The case was carried to the court for the correction of errors on a special verdict finding the facts above stated (with two other causes in which the facts, so far as affected the questions involved, were substantially the same), and is reported in 14 John. Rep., 484, etc., under the title of *The Executors of Clason* v. *Merritt & Merritt;* and one of the other cases is by same plaintiffs in error against Baily & Voorhees, and that case is the one particularly referred to in the opinion of the court. In that court the point was raised on the part of Clason's executors, that the agreement was not signed by both parties; and Chancellor KENT, in giving the opinion of the court, said : " Clason's name (that of the purchaser) was inserted in the contract by his authorized agent; and if it were admitted that the name of the other party was not there by their direction, yet, the better opinion is, that Clason, the party who is sought to be charged, is estopped by his name from saying that the contract was not duly signed within the purview of the statute of frauds, and that it was sufficient if the agreement was signed by the party to be charged," adding : " It appears to me that this is the result of the weight of authority, both in the courts of law and equity;" and after reviewing several cases in both courts sustaining that result, he said : " There was nothing to disturb the strong and united current of authority of those cases, but the observations of Lord Ch. REDESDALE, in *Lawrenson* v. *Butler* (1 Sch. & Lef., 13), who thought that the contract ought to be mutual to be binding, and that, if one party could not enforce it, the other ought not; and said that to decree performance when one party only was bound, would " make the statute really a statute of frauds, for it would enable any

person who had procured another to sign an agreement to make it depend on his own will and pleasure whether it should be an agreement or not." He then, after remarking that the intrinsic force of the argument, the boldness with which it was applied, and the commanding weight of the very respectable character who used it, caused the courts for a time to pause, but that they had on further consideration resumed their former track, and citing authorities on both sides of the question, added: "I have thought, and have often intimated, that the weight of argument was in favor of the construction that the agreement concerning lands, to be enforced in equity, should be mutually binding, and that the one party ought not to be at liberty to enforce, at his pleasure, an agreement which the other was not entitled to claim. It appears to be settled, *Hawkins* v. *Holmes* (1 P. Wm., 770), that, though the plaintiff has signed the agreement, he never can enforce it against the party who has not signed it. The remedy, therefore, in such case is not mutual. But notwithstanding this objection, it appears from the review of the cases, that the point is too well settled to be now questioned." He then says: "There is a slight variation in the statute respecting agreements concerning the sale of lands, and agreements concerning the sale of chattels, inasmuch as the one section (being the fourth section of the English and the eleventh section of our statute) speaks of the *party*, and the other section (being the seventeenth of the English and the fifteenth of ours) speaks of the *parties* to be charged; but I do not find from the cases that this variation has produced any difference in the decisions. The construction as to the point under consideration has been uniformly the same in both cases;" and after the full discussion and consideration of this question he comes to the conclusion, that " Clason, who signed the agreement, and is the party sought to be charged, is, then, according to the authorities, bound by the agreement, and he cannot set up the statute in bar;" adding, " but I do not deem it absolutely necessary to place the cause on this ground, though as the question was raised and

discussed, I thought it would be useful to advert to the most material cases, and to trace the doctrine through the course of authority."

He then says that, in his opinion, "the objection itself is not well founded in point of fact;" and after a reference to the memorandum and its contents, and the facts found by the special verdict, he concludes that the contract was, in judgment of law, reduced to writing and signed by both parties.

Another objection, taken by Clason in the Supreme Court, and by the executors in the Court for the Correction of Errors, to the validity of the contract (not material to the case now under review), was then considered by the learned chancellor, and held to be untenable; and thereupon the judgment of the Supreme Court was affirmed (two senators dissenting).

It may be important in this connection to advert to the fact, that this opinion was delivered in 1817, nearly nine years after what was said by him as chief justice in *Bailey & Bogart* v. *Ogden* (3 Johns., 399, *supra*), and about three years after the intimations made by him in *Parkhurst* v. *Van Cortlandt* (1 Johns. Ch., 282), and *Benedict* v. *Lynch* (id., 370), to the effect that an agreement concerning lands, to be enforced in equity, should be mutually binding, and to which he probably had reference in that opinion, and as to which he said therein, that it appeared from the view of the cases that the point was too well settled to be then questioned.

Although, in view of the conclusion arrived at by the learned chancellor on the other point (that the contract was, in judgment of law, reduced to writing and signed by both parties), it was not, as he himself stated, absolutely necessary to place the cause on the ground first discussed and considered by him as above mentioned; yet, as it was raised by the facts found by the special verdict, on which the Supreme Court had given judgment, and on the argument in the Court for the Correction of Errors, it was material that it should be considered by him. He remarked in the commencement of that opinion, that the case struck him, on the argument, as being plain; but as it may have appeared to other members

of the court in a different, or, at least, in a more serious light, he deemed it proper and necessary to state the reasons for his opinion on both the questions subsequently examined and discussed by him. It, as it appears to me, is a perversion of terms, and an entire misconception of the effect and force of the able and elaborate opinion of that learned and distinguished jurist, to characterize or treat it as a mere *obiter dictum.*

GARDINER, J., in *James* v. *Patten* (2 Seld., 9), in which it had been claimed by counsel that a case, cited on the argument in support of, and, indeed, decisive of, the question then under review and consideration, might have been decided on other grounds than those stated in the prevailing opinion on that point, said: "We are now gravely informed that it was possible to reverse the judgment upon other grounds. The effect of any decision in a court composed of more than a single judge might in this way be avoided. But when two questions are presented to the appellate court, upon which their decision is asked, both of which are discussed by counsel, and each is considered and determined in the only opinions read in the hearing of the members, the majority must be deemed to acquiesce in the conclusions upon those questions reached in those opinions, unless some one dissents. With a different rule, there could be no such thing as the establishment of a principle by the court of last resort, when more than a single point was presented." And PAIGE, J., said in the same case: "Where several questions arise in a cause, and the opinions delivered agree in regard to all of them, and the other members give a silent vote of concurrence, then all the questions will be deemed to have been determined by a majority of the court, and the case will be regarded and respected as an authoritative adjudication of all such questions."

In the case of *Clason* v. *Baily* (14 Johns., 484, *supra*) the opinion of the chancellor was the only one delivered, and must be held to be an authority of the court of last resort on

the very question now presented for our decision and adjudication.

The question again arose in the Supreme Court in 1829, in *Russel* v. *Nicoll* (3 Wend., 112), which was an action by the plaintiffs claiming damage for the non-delivery of a quantity of cotton alleged to have been purchased by them of the defendants.

The contract was substantially in all essential particulars like the one in the present case. It was in these words:

"Sold by Daniel Rapalye, for our account, to R. M. and J. Russell five hundred bales of cotton, at sixteen and a half cents per pound. Said cotton was purchased for our account at Huntsville, and is to be delivered, on its arrival at this port from New Orleans, at any time between the present date and the first day of June next, and the amount to be cash on delivery, to be reweighed, and two per cent tare allowed.

"NEW YORK, *February* 9, 1825.

"FRANCIS H. NICOLL & CO."

The plaintiffs were nonsuited on the trial at the circuit, on grounds other than that now under consideration. But on the review of the case by the Supreme Court, the counsel for the defendants stated that the plaintiffs, if an action had been brought against them on the contract, might have interposed the statute of frauds as a defence, they not having signed any note or memorandum in writing of the bargain; and, the agreement produced being signed only by the defendants, that the plaintiff could not have been holden, and the defendants were not bound, and that, though this objection was not taken at the circuit, the court would not grant a new trial if they perceived that the plaintiffs must be nonsuited on that ground; as to which point the court, by MARCY, J., said, in the commencement of his opinion: "It was insisted on the argument that the contract declared on was within the statute of frauds, and void for not being reduced to writing and signed as the statute directs. This objection is not sustainable. If the contract be within the statute, it is very clear that the signing by the defendants is a compliance with its require-

ments. (*Egerton* v. *Mathews and another*, 6 East, 307, *Saunderson* v. *Jackson and another*, 2 Bos. & Pul., 238.)"

The question was thus distinctly raised and decided in the Supreme Court, and the decision is a distinct and positive authority thereon. If the objection had been well founded, it would have been decisive against the plaintiffs' right of recovery, and there would have been no necessity to consider the questions raised at the circuit, and which were afterward elaborately discussed in the opinion. Those questions were based on the assumption that the contract was valid and obligatory on the defendants. The circumstance that the question arising on the statute of frauds was not raised at the circuit does not impair, or in the least weaken, the effect of the decision thereon by the Supreme Court. On the contrary, it shows that the eminent counsel for the defendants did not at that time deem it available and effectual, and they probably presented it in opposing the motion to set aside the nonsuit, on the principle that they would not then fail to present and urge any point on which the nonsuit might be sustained or supported.

The next case referred to by the counsel was that of *Dykers & Alstyne* v. *Townsend*, reported in 24 N. Y. Rep., p. 57, &c. That was an action to recover damages for the failure of the defendant to receive and pay for 1,100 shares of the capital stock of the New York and Erie Railroad Company, purchased under three several contracts, one of which is set forth in the case, and is in the following form:

"NEW YORK, *May 2d*, 1854.

" I have purchased of Dykers, Alstyne & Co. 500 shares of the New York and Erie Railroad Company at seventy (70) per cent, and deliverable in sixty days, buyer's option, with interest at the rate of six per cent per annum.

"W. S. HOYT."

The other two were in the same form, except that one of them was signed by one Brown. It was alleged and proved on the trial that Hoyt and Brown were brokers, and acted as the agents of the defendant in making the contract.

When the plaintiff rested, the defendant moved to dismiss the complaint, on the grounds that the contracts were signed by Brown and Hoyt in their own names, and that the name of the defendant nowhere appeared upon them; that parol evidence could not be introduced to show that the defendant was the person for whose benefit the contracts were made, and that the plaintiffs had not shown any valid contract between themselves; and the defendant took an exception. Proof was then offered of certain facts for the purpose of showing the contract void under the stock jobbing act, in force at the time of the sale, which was rejected, and the defendant took an exception. The plaintiff recovered a verdict, and judgment thereon was rendered at General Term, in the first district, which, on an appeal to this court, was affirmed without any dissent to such affirmance. One of the judges, SELDEN, J., was absent, and another, JAMES, J., expressed no opinion. That *decision,* so far as it affects the present question, gives no color for sustaining the judgment in the case now under review. It is true that Judge HOYT, in giving his opinion for its affirmance, remarked that, as an original question, he should have had no hesitation in saying, in a case where the contract was entirely executory on both sides, and no part of the consideration had been paid, that it was necessary that it should be in writing, under the statute, and be signed by both parties thereto, or their agents, in order to be binding upon either; or, in other words, there being no consideration paid, the promise of one party would be the consideration for the promise of the other, and that both must be in writing to charge either; and after referring to the distinction between the section of the statute applicable to that case and section 8, relating to a contract for the sale of land, which he concedes, on the authority of this court, in *Worrall* v. *Munn* (1 Selden, page 244), is only required to be signed by the party by whom the sale is to be made, and after adding that, in the case of a contract for the sale of goods, he should say the party to be charged means the vendor upon his contract to sel¹, and the vendee upon his con-

tract to accept and pay for the goods, he added that this ques
tion did not appear to have been directly raised on the trial;
if it had been, it might, perhaps, have been obviated by the
production of a counterpart of the contract, signed by the
plaintiffs, and then said: "As there are several authorities
which seemingly, at least, give a different construction to this
and similar provisions in the former statute of frauds, I do
not propose further to discuss the question at this time."
And after a more particular reference to the requirements of
the statute, he concludes with the remark: "In this case, a
note or memorandum of the contract was made in writing,
and signed by the lawful agent of the defendant, and we
think that this was sufficient compliance with the statute,
according to the settled construction that has been given
to it."

The only other case referred to by the respondent's counsel,
on this question, was that of *Brabin* v. *Hyde* (32 N. Y. Rep.,
519), which he says decided that the memorandum must be
signed by both parties. This is clearly a mistake.

The action was brought by the plaintiff to recover the posses-
sion of a mare and colt, which he claimed as owner, by pur-
chase from one Milton Blackmer in August, 1857; and which,
on the third day of September next thereafter, the defendant
took from his possession, under a claim that he owned them
under a purchase from the same vendor in the month of July
preceding. The plaintiff recovered a verdict on which judg-
ment was entered. That judgment was reversed by the General
Term on appeal, and the plaintiff thereupon appealed to this
court. The judge on the trial in his charge to the jury, after
stating that the defendant had given evidence of a prior
bargain, and that it was objected by the plaintiff that the
contract under which he claimed ownership was void by the
statute of frauds, read and explained the statute, and then
charged, "that according to the defendant's narrative of facts,
the contract rested solely in *words*. There was no other evi-
dence of it; there was no delivery of the property or memo-
randum made, as the contract was narrated by him, nor any

payment, nor was the property present at any time, or any thing to save it from the statute of frauds. I advise you that the contract for the purchase of the horses by the defendant, as narrated by himself, is invalid." To which there was an exception. When the case was reviewed by this court, BROWN, J., in giving the opinion on the reversal of the order of the General Term granting a new trial, referred to the facts detailed in the narrative of the defendant; and from the learned judge's statement of them, it appeared that a part of the price, agreed to be paid by the defendant for the mare and colt, was to be credited on his books when he got to his house, on account of a debt owing and due to him from Blackmer; that he went home and made the entry in his book, giving him credit on the day of the purchase for the amount that was to be so credited. It was an original entry. On his cross-examination, it further appeared, that he kept a day book and a ledger, for the purposes of his business; that the entries to Blackmer's credit were not upon those books, or in any account of his daily transactions; and that all that appeared, upon any book, was an entry made of the mare and colt upon a blank leaf, on which there were no other entries. It was not claimed that he gave Blackmer any receipt, or discharge, for the money for the mare and colt, or that he communicated to him what he had done. There were some additional facts stated, for the purpose of showing a delivery of the mare and colt, which are immaterial to be noticed here, and the learned judge, after the conclusion of his statement of the facts, said: " These are the facts upon which the defendant relied to take the case out of the statute of frauds. There was no delivery of the property to the purchaser, and no memorandum of the sale signed by the parties;" and then, after stating the charge to the jury as above set forth, and making some general remarks on the insufficiency of words merely, and the necessity of acts as evidence of a purpose to part with, or to accept, the ownership of personal property, he said: " There must have occurred one of the three acts mentioned in the statute, or

the sale will not be effected. These acts are not to be per-
formed by one party only; they are to be concurred in by
both parties to the contract. If the memorandum in writing
is relied upon, it must be signed by the parties, not the
party, to be charged thereby." He then, after giving his
views of what is necessary, when either a delivery of the
goods, or a part of them, or the payment of some part of the
purchase money is depended upon as the consummation of the
contract, and after the application of his construction of the
requirements of that statute to the facts of the case,
closes the opinion with this remark: "I think the judge at
the circuit, in his charge to the jury, was entirely right;" and
thereupon, the order of the General Term granting a new
trial was reversed, and the judgment on the verdict was
affirmed.

No other opinion appears to have been given in the case.

It is evident, from the opinion and the conclusion arrived at
by the learned judge, that there was no question involving
the construction of the section of the statute now under con-
sideration. On the contrary, he declares that the judge at
the circuit, who had charged the jury, "that, according to
the defendant's narrative of the facts, the contract rested
*solely in words*," was entirely right. The remark, that it
was necessary that a written memorandum in writing of a
contract should be signed by both parties to it, was gratu-
itous; and certainly there is not the least color for saying, that
this court in that case "decided that the memorandum must
be signed by both parties."

I have now examined, with much and perhaps unnecessary
particularity, the cases referred to by the counsel to sustain
his position, that there has been no decision in the court of
last resort, and no well considered one in the other courts,
holding it to be unnecessary that the note or memorandum
of the contract for the sale of goods should be signed by both
parties. That examination shows not only that all of them,
except the case of *Bailey* v. *Ogden* (3 Johns. R., 399, *supra*),
involve the question, and hold that the statute is complied

with when the note or memorandum of the contract is signed
or subscribed by the party to be charged thereby, but also
that the question has been decided after a careful considera-
tion thereof; and in the case of *Bailey* v. *Ogden* the same
principle is distinctly and fully recognized by KENT, Ch. J.,
as appears by his statements above referred to.

I will add another case (that of *Davis* v. *Shields*, 26 Wend.,
341), in the Court for the Correction of Errors, decided in
1841, where the question was again raised, and considered by
Chancellor WALWORTH and Senator VERPLANK. The chan-
cellor, at page 350, said that " the former statute of frauds
required the note or memorandum of the agreement to be
signed by the parties to be charged thereby, and the courts
had not only decided that it was not necessary that it should
be signed by both parties, so as to make it legally binding on
both, or upon neither, but they had in many cases held that
a literal signing of the memorandum by the party who was
sought to be charged thereby was not necessary." Senator
VERPLANK, at page 362, said : " A doubt naturally arises
whether, under our Revised Statutes, the words to ' be sub-
scribed by the parties to be charged ' do not require that the
agreement should be from the first binding, by means of an
authorized signing, upon all the parties to the bargain;" and,
after referring to the case of *Clason* v. *Merritt*, which he
considered as having settled the question in that court, and
stating that the decision was in conformity with numerous
prior decisions, as was shown in the opinion of Chancellor
KENT in that case, he said : " It seems to me these words
must be taken in their fixed and adjudicated sense, according
to which it is enough that the agreement be signed, or be
authorized to be signed, by the party to be charged in the
suit;" and adds, " nor is this interpretation without the sup-
port of reasons of equity independent of authority. It is
within the literal sense of the words used;" and then, after
some remarks in support of those views, he concludes: " I
adhere, then, to the old adjudicated meaning of the words
retained from the original statute, and consider it sufficient

if the memorandum was authorized by the vendors who are now to be charged, although it might not have been originally binding on the vendee."

In that case, the question was also presented whether the contract was "*subscribed*" within the requirements of the Revised Statutes, without being actually signed below or at the end of the memorandum, and it was decided that it was not; and the decision of the Supreme Court holding to the contrary, as the case is reported in 24 Wend., 324, was reversed.

In addition to the above cases I will cite, as authority sustaining the sufficiency of the signature by the party to be charged, the following: (*West* v. *Newton*, 1 Duer Rep., 277–283; *Woodward* v. *Harris & Aspinwall*, 3 Sand. Sup. Co. Rep., 272–277; *Fenley* v. *Stewart*, 5 id., 101–5.) These authorities are in conformity to the decisions on the English statute, which were recognized as authority by Chancellor KENT in *Clason* v. *Baily* (14 John., 484), &c. Among those were *Saunderson* v. *Jackson* (2 Bos. & Pul., 238); *Champion* v. *Plummer* (4 Bos. & Pul., 252); *Egerton* v. *Matthews* (6 East, 307); *Allen* v. *Bennett* (3 Taunton, 169). In *Egerton* v. *Matthews*, the action was brought by the seller against the buyers for not accepting and paying for certain goods, which the defendants had contracted to purchase by the following memorandum in writing: "We agree to give Mr. Egerton nineteen cents per pound for thirty bales of Smyrna cotton, customary allowance cash, three per cent as soon as our certificate is complete." It was dated 2d September, 1803, and was signed by the defendants, the buyers, only. They had before that time become bankrupts, and their certificate was waiting for the lord chancellor's allowance, and after it was allowed, they signed the memorandum again. On the opening of the case upon the trial it was objected that the contract was altogether executory, that no consideration appeared on the face of the writing for the promise, and that there was not any mutuality in the engagement, and, therefore, that it was void by the statute of frauds. (29 Car., II, ch. 3.)

The objection prevailed, and the plaintiff was nonsuited ; but on a motion to set aside the nonsuit, Lord ELLENBOROUGH, C. J., observed that the 17th clause of that statute required " some note or memorandum in writing of the bargain signed *by the parties to be charged by the contract ;*" and that this memorandum above quoted was a memorandum of the bargain, or at least so much of it as was sufficient to bind the *parties* to be *charged therewith,* and whose signature to it was all that the statute required. ˙

The question again arose in *Allen* v. *Bennett* (3 Taunton, 169). The action was brought by the buyer against the seller for the non-delivery of goods, and was based on certain entries of the sale made by defendant's agent in a book of the plaintiff. The sale was subsequently recognized in a correspondence by the plaintiff with the defendant, but there was no evidence that the plaintiff had signed any contract to bind himself. It was objected on the trial that there was not a sufficient note in writing within the statute of frauds for the sale of the goods, inasmuch as it did not at all appear by the contract who was the buyer ; that all that could be gathered from the entries was, that they were contracts entered into by Bennett, to sell goods to persons not named, and who the persons were could not be supplied by oral evidence. There was a verdict for the plaintiff. On a motion to set it aside, the correspondence was held sufficient to connect the parties. It was then objected that the party who had not signed was not bound, as to which, MANSFIELD, Ch. J., said that the cases of *Egerton* v. *Matthews, Saunderson* v. *Jackson* and *Champion* v. *Plummer* (*supra*), " suppose a signature by the seller to be sufficient, and every one knows it is the daily practice of the Court of Chancery to establish contracts signed by one person only ; and yet, a court of equity can no more dispense with the statute of frauds than a court of law can," and he held that the verdict should be sustained. HEATH, J., was of the same opinion, and said there was a case in Strange by which it appeared that a voidable promise was sufficient to sustain a promise. LAWRENCE, J., after showing that it was

evident that the contract was entered into by the authority of the defendants, said that objection would quite overturn the cases of *Egerton* v. *Matthews*, *Saunderson* v. *Jackson* and *Champion* v. *Plummer*, and the statute of frauds clearly supposes the probability of there being a signature by one person only.

Without multiplying cases, I will content myself with quoting the remark of EARL, Ch. J., in the case of *Parton* v. *Crofts* (Com. Bench Rep., N. S., vol. 16, 111 Eng. Com. Law Rep., p. 11), where he, after discussing and considering the effect of bought and sold notes, in reference to the requirement of the statute of frauds, says: " To satisfy the seventeenth section of the statute, it is enough to produce a memorandum of the contract signed by the party to be charged thereby, or by an agent thereunto duly authorized."

This is recognized as the rule by the elementary writers. Chancellor KENT, in his Commentaries (vol. 2, p. 510), says : " The signing of the agreement by one party only is sufficient, provided it be the party sought to be charged. He is estopped by his signature from denying that the contract was validly executed, though the paper be not signed by the other party, who sues for the performance."

Starkie, in his work on Evidence (vol. 2, p. 614), says : " It is sufficient if there be a memorandum signed by the defendant, the vendor, although it be not signed by the plaintiff, the vendee, and although it could not have been enforced by the latter." (See also Comyn on Contracts at page 123.) In view of the numerous decisions, both in this State and in England, it appears to me to be impossible now to hold a different rule by giving a different construction to the statute of frauds.

Assuming then that the memorandum, on which the present action is based, is valid and binding on both parties at common law, and that the statute only requires it to be signed by the party to be charged, it appears to me to follow, as a necessary consequence, that the defendants, the vendors,

in this case having, by their signature in writing, given the written evidence to charge them, are liable thereon; and that the nonsuit in the court below was improperly granted.

As, however, a majority of this court was unable to concur in a judgment on the first argument, it may be proper to refer briefly to the opinion then read in affirmance of the nonsuit, and which has been presented to us on the present argument. It concedes that it is not necessary, under the requirements of the statute of frauds, that the contract should be signed by both parties; and that, prior to the statute, it would have been valid and binding upon both of them without being reduced to writing and signed by either. But the learned justice, by whom it was delivered, adds that: " The statute makes the contract void, although reduced to writing, as to the party not subscribing it; and it follows that the void promise of the latter furnished no consideration for the agreement of the party who subscribes it."

This appears to me to be a misconstruction of the statute. That does not define or prescribe what shall be necessary to constitute a contract. On the contrary, it assumes the existence of one that is valid and binding in all respects, and on that assumption declares that it shall be " void," not unlawful but ineffectual, of no binding force to charge any of the parties with a liability thereon who does not subscribe a note or memorandum thereof in writing. It did not affect nor was it intended to affect an oral agreement, otherwise, or to a greater extent, than by the requirement of written evidence of its terms by the signature or subscription of the party who was to be charged with a legal liability thereon. It is true that the party who does not sign or subscribe it may not be liable thereon in an action, as to which I deem it unnecessary to express an opinion; but that fact does not destroy or annul the consideration and terms which form the inducement of the other party to make it obligatory on himself by compliance with all the requirements of the law to make it so. On the contrary, the same consideration continued without being

impaired or annuled, and no new or further evidence of it was requisite.

It is too late for him, after executing an agreement conformable in all respects with the requirements of the law, and with the avowed intention to bind and charge himself, for the purpose of avoiding the liability thus voluntarily assumed, to say that the other party thereto cannot be charged thereon, on the sole ground that he himself did not take the precautionary means required by the law to charge such other party, either through neglect or in reliance on his promise to fulfill his part of it without being legally bound thereto.

The object of the statute is attained by protecting a vendor against a liability, founded on oral evidence only of his contract, without relieving him from an obligation clearly assumed and created by a written evidence thereof, the evidence of which, under such circumstances, would make the statute the means of perpetrating fraud, as well as a protection against it, and against perjury or subornation of perjury. A construction that leads to such a result is not necessary, and is, in my opinion, unwarranted.

The substance of these views is tersely expressed by Parsons in his work on Mercantile Law (page 78), where he, after considering the several clauses of the statute of frauds, says: "The operation of the statute in the clauses we have considered is not to avoid the contract, but only to inhibit and prevent actions from being brought upon it. In other respects it is valid."

Conceding it to be true that the consideration for a promise, as well as the promise itself, must be in writing to give any right of action thereon against a party who has signed it, as was decided in *Waine* v. *Wailters* (5 East, 10) and in *Sears* v. *Brink* (3 Johnson, 210), it does by no means follow that, when those and the other requisite elements to constitute a valid contract appear, it is also necessary that there should be a mutuality of obligation to give a right of action against either party.

Chancellor KENT, in *Clason* v. *Bailey* (14 John. Rep.,

488, *supra*), says that, although Lord Ch. REDESDALE, in *Lawrenson* v. *Butler* (1 Sch. & Lef., 13), had expressed the opinion that the contract ought to be mutual to be binding, and that if one party could not enforce it the other ought not, and that he himself had thought, and had often intimated, that the remedy ought to be mutual, yet it appeared from a review of the cases that it had been too well settled to the contrary to be now questioned.

It was subsequently (in 1836) said by TINDAL, J., in *Laythoarp* v. *Bryant* (2 Bingham N. C., 735), speaking of the clause of the English statute requiring an agreement for the sale of lands or any interest therein, or a note or memorandum thereof in writing, to be signed by the party to be charged therewith, or some other person thereunto lawfully authorized by him, that the party who has signed the agreement is the party to be charged, and he cannot be subject to any fraud; that there had been some confusion in the argument of the case between the *consideration* of the agreement and the mutuality of claim; and, although it was true that the consideration must appear on the face of the agreement, yet he had found no case nor any reason for saying that it is the signature of both parties that makes the agreement. VAUGHN, J., in the same case, said that the argument had proceeded on a fallacy arising out of a misconception of the case of *Waine* v. *Wailters;* that the decision therein never turned on the ground that the mutuality of the contract must appear, but only that the note or memorandum must show the consideration, as well as the promise.

An objection of the same nature as that now under consideration was raised in *Ballard* v. *Walker* (3 Johns. Cases, 60), which was an action by the vendee on a written agreement for the sale of land to him, which was signed by the vendor alone, in which the name of the parties and all the terms of sale were stated, as to which RADCLIFF, J., said: "The first objection, so far as it rests on the want of consideration, appears to me inapplicable to the case. If the contract would be valid, as a contract by parol merely, there

would certainly be an ample consideration. The defendant agreed to convey lands to the plaintiff for a stipulated price, and the plaintiff, in consideration of such conveyance, agreed to pay the price to the defendant. Here were mutual and valid considerations. If the agreement was not sufficiently reduced to writing, or signed by the parties, agreeably to the statute of frauds, it is void by force of that statute, but not for want of consideration." He then proceeded to show that the plaintiff could not be deprived of a recovery because it was not signed by the plaintiffs. And KENT, J., said: " This contract is valid so far as a consideration is in question. One agrees to sell, and the other to convey. It is sufficient if the writing be signed by one party only, and accepted by the other. This takes the case out of the statute of frauds."

The objection based on a want of mutuality, was also urged in the matter of Jane Hunter (1 Edw. Ch. R., 1), and overruled by Vice-Chancellor McCown. That decision was recognized and approved in *McCrea* v. *Purmort* (16 Wend., 460), decided in the Court for the Correction of Errors, in 1836, where COWEN, J., said, that the objection that the agreement there in question was void, as being signed by one party only, and thus wanting mutuality, and that it must therefore go for nothing, was fully answered by the learned vice-chancellor in Hunter's case, *supra ;* and PAIGE, J., in the case of *Worrall* v. *Munn* (1 Seld., 229), decided in this court, said: " A contract, valid within the statute, even if not binding on the party who has not subscribed it, can nevertheless be enforced, either at law or in equity, against the party (if the contract is for the sale of land) by whom the sale is to be made, or (if for the sale of goods) who is to be charged thereby, if subscribed by him. Want of mutuality is no defence to the suit. The vendor, a party to be charged, who has subscribed the contract, is estopped by his signature from denying that the contract was validly executed, although not signed by the other party who sues for the performance ;" and added, " it is the constant practice of the Court of Chancery to compel a specific performance, by a vendor, of a contract for the sale of

lands subscribed by him, although the vendee has not bound himself by subscribing the contract. These cases show a clear distinction between a consideration and the mutuality of obligation, and that the former is necessary, while the latter is not. (See also *Fenley* v. *Stewart*, 5 Sandf. R., 101, *supra*.)

The views above expressed show that the defendants had bound themselves by the contract in question to deliver the rifles therein agreed to be delivered, and that there was a good and sufficient consideration for their obligation.

It follows that the judgment of the court below should be reversed, and a new trial ordered, costs to abide the event.

INGALLS, J. (dissenting.) The defendants executed and delivered to the plaintiff an instrument in writing, of which the following is a copy :

"NEW YORK, *May* 13, 1861.

"We agree to deliver P. S. Justice, one thousand Enfield pattern rifles (with bayonets, no other extras) in New York, at eighteen dollars each, cash upon such delivery; said rifles to be shipped from Liverpool not later than 1st July, and before if possible.

"W. BAILEY LANG & CO."

The plaintiff subscribed no agreement or memorandum, paid no money, parted with nothing of value, and assumed no obligation on account of the defendants' promise. The contract remains wholly executory, no part of the rifles having been delivered. The plaintiff instituted this action to recover damages for the failure of the defendants to deliver the rifles. The only question of any importance is, whether the mere subscribing and delivery of the above instrument by the defendants created a legal obligation on their part, which entitles the plaintiff to damages for a failure to deliver the rifles. The counsel for the appellant insists that the mere subscribing and delivery of the said instrument by the defendants constituted a valid and binding obligation on their part, within the provisions of the statute of frauds, and conse-

quently the defendants were liable to respond in damages for a violation of their agreement. The provision of the statute of frauds, which has any application to this case, is as follows : "Every contract for the sale of any goods, chattels, or things in action for the price of fifty dollars or more shall be void, unless : 1st. A note or memorandum of such contract be made in writing and be subscribed by the parties to be charged thereby." The instrument in question was subscribed by the defendants ; and so far the statute was complied with. But something further was required to constitute it a valid and binding contract ; the agreement being wholly executory, it was indispensable that there should be some consideration for the agreement of the defendants, without which it was void. If the defendants had offered the rifles, the plaintiff was at liberty to refuse to receive them, and the defendants would have been wholly without remedy. The statute of frauds, while it declares that a contract for the sale of personal property for the price of fifty dollars or more shall be void, unless there is a note or memorandum subscribed by the party to be charged, does not declare that such note or memorandum, so subscribed, is all that is essential to constitute a valid contract. The statute may be complied with in the above particular, and yet the contract be wholly void because there is no consideration to support it. It was not the intention of the legislature, in adopting that statute, to dispense with the necessity of having a consideration to support an agreement, but to require such note or memorandum in addition to such consideration. If there had been a consideration, however slight, for the defendants' promise, they would have been bound, because they complied with the statute so far as the writing was concerned. If the instrument in question had been subscribed by the plaintiff, and had contained a promise on his part to receive the rifles and pay for them, such promise would have been a good consideration for the defendants' undertaking. We are not called upon to examine the numerous cases cited, by the counsel, touching the statute of frauds, because most of them have little or no bearing upon

the question involved in the disposition of this appeal.. In my judgment the case is reduced to one question ; whether an executory contract can be enforced, when subscribed by one party only, and there is no consideration whatever for such contract. I cannot bring my mind to doubt, but that such agreement is wholly void. The judgment of the General Term should be affirmed with costs.

All concur for reversal, except INGALLS, J., who was for affirmance.

Judgment reversed and new trial ordered.