KOHN & BAER, Respondent, *v.* I. ARIOWITSCH CO., INC., Appellant.

First Department, February 1, 1918.

**Statute of Frauds — memorandum in writing — acceptance by parol — sale — action by vendee for breach of contract — evidence.**

A definite offer in writing signed by a vendor is sufficient to charge him, even though the acceptance be by parol.

Hence, in an action by a vendee under an executory contract for the sale and delivery of skins to recover damages for the failure of the vendor to perform, there being a sufficient memorandum in writing signed by the defendant, within the Statute of Frauds, it was competent for the plaintiff to show a parol acceptance given by the defendant on the same day.

Since there was no reference in the contract to a sample, the action cannot be sustained on that theory.

As the contract was indefinite with respect to the grade or quality of skins, and there was no evidence with respect to the manner in which such skins are dealt in or with respect to any custom, a verdict on the basis of a market price considerably higher than the minimum price, depending on the grade or quality of the skins, should not be permitted to stand.

APPEAL by the defendant, I. Ariowitsch Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of June, 1917, upon the verdict of a jury,

and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Abraham Rosenstein* of counsel [*Feltenstein & Rosenstein,* attorneys], for the appellant.

*Aaron Honig,* for the respondent.

LAUGHLIN, J.:

The action is brought by the vendee under an executory contract for the sale and delivery of muskrat skins to recover damages on the ground that the vendor failed to perform. No consideration was paid and the contract was performed neither in whole nor in part. The important questions presented by the appeal arise on the defendant's plea of the Statute of Frauds. Both parties are domestic corporations.

The plaintiff claims and the trial court held that there was a sufficient memorandum in writing signed by the defendant within the Statute of Frauds. It is uncontroverted that on the 31st of August, 1915, one Louis D. Baer, the president of the plaintiff, called at the defendant's place of business and had a conversation with Abraham Cohen, the president of the defendant, concerning an option to purchase or the purchase of muskrat skins, and that as a result of these negotiations an instrument in writing was signed and executed as follows:

" Date *Aug.* 31*st,* 1915.

" Order No.

" M................... Ariowitsch & Co.

" Ship to

" At                     City

" How ship                When

" Terms

" Salesman                Buyer

" Mr. Cohen gives me the refusal on 10,000 Ten thousand Seal Dyed Rats Hollanders Dye to be delivered from Sept. 1st to 30th at 62½c if not delivered in Sept. such as soon as they are delivered.

" KOHN & BAER

" A. COHEN."

Baer signed the plaintiff's name and Cohen signed his own name but it was conceded that Cohen was acting for and on behalf of the defendant and had authority to make the contract and to bind the defendant, and no point was made upon the trial or upon the appeal with respect to his having signed his own name instead of the name of the corporation. The theory of the plaintiff is that the written contract constituted an option and that it was accepted verbally by the president of the plaintiff on the same day and thereupon became binding upon both parties. It is well settled that a definite offer in writing signed by a vendor or purchaser is sufficient to charge him even though the acceptance be by parol. (*Justice* v. *Lang*, 42 N. Y. 493; *Mason* v. *Decker*, 72 id. 595; *Bristol* v. *Mente*, 79 App. Div. 67.) It was competent, therefore, for the plaintiff to show a parol acceptance of the option given by the defendant to it to purchase the skins. A definite, unequivocal acceptance on the same day was shown by the testimony of Baer which was corroborated. That testimony was controverted and presented a question of fact which was submitted to the jury. On that aspect of the case the evidence on the part of the plaintiff was sufficient to sustain the verdict.

The defendant, however, further contends that the contract is uncertain and ambiguous with respect to the skins which were to be sold by the defendant. It is not contended and, of course, could not be successfully, that the meaning of the words used in the contract could not be shown by parol. It appears by the uncontroverted evidence that it referred to muskrat skins designed for use in making furs known as Hudson Bay seal or seal and dyed by a process known as Hollander's dye. There is no question raised with respect to the writing being sufficiently definite concerning the time of delivery which was to be between the first and thirtieth days of the following month or as soon as the skins were delivered to the defendant by the dyer. The point made is that the contract is indefinite with respect to the grade or quality of the skins. The president of the plaintiff testified that the sale was by sample, and that Cohen showed him a sample of dyed seal or muskrat skins during the negotiations and prior to the signing of the contract. It is manifest

that the action cannot be sustained on that theory for there is no reference in the contract to a sample. The evidence is uncontroverted that on the twenty-seventh or twenty-eighth of September after the making of the contract plaintiff's president was notified by telephone that the defendant had received about 10,000 skins from the dyer and was requested to call and examine them, and that he stated that he was unable to call that day but would call the next morning. On the part of the plaintiff testimony was given to the effect that the defendant acquiesced in this; but on the part of the defendant the testimony was to the effect that the plaintiff requested that some of the skins be sent to it on memorandum and that this was declined, and that plaintiff's president was informed that there were customers at the defendant's store at the time and that unless he came down that day defendant would sell the skins, and that he acquiesced in this and that defendant thereupon sold them at the same price. That issue of fact has also been resolved in favor of the plaintiff by the jury. Further evidence was given on the part of the plaintiff tending to show that its president called on the defendant the next day and demanded the skins and was informed that he could not have them unless he paid one dollar and ten cents per skin therefor, but on the part of the defendant the testimony is to the effect that when Baer called that day he was informed that the skins had been sold.

The plaintiff has recovered on the theory that the market price of the skins at the time and place of delivery was one dollar per skin and the verdict is for the difference between the contract price and that market price. On the issue with respect to the market price it developed by the testimony of both parties that there are different qualities or grades of skins and that the market price thereof differed. On the part of the plaintiff the testimony shows that the market price of muskrat skins at the time in question varied from seventy-five cents to one dollar and seventy-five cents per skin depending on the quality or grade of the skins; and on the part of the defendant the evidence shows that the market price varied from forty cents to ninety-two cents and that the average price was from sixty cents to sixty-five cents. It is to be inferred from the evidence that the muskrat skins

dealt in in this market come from some twenty northern and southern States and the evidence shows that the skins from the northern States are of a better grade or quality than those from the southern States.

There is no evidence with respect to the quantities in which the skins are purchased or the proportionate amount of skins from one section of the country or the other that come into the market, or with respect to whether the skins are sorted or graded before they are dyed or sold, and there is no evidence with respect to a custom concerning any of these matters. The contract being indefinite with respect to the grade or quality of skins, in the absence of any evidence with respect to the manner in which the skins are dealt in or with respect to any custom, it would seem that the contract could have been satisfied by the delivery of skins of any grade or quality, and inasmuch, therefore, as the plaintiff has recovered a verdict on the basis of a market price considerably higher than the minimum market price, depending on the grade or quality of the skins, shown by the preponderance of the evidence, it should not be permitted to stand. It is quite evident that considerable of the testimony was not directed to the market price of skins that would fulfill the terms of the contract. On the part of the plaintiff some of the testimony with respect to the market price was evidently based on the sample pursuant to which the plaintiff claimed the skins were sold; and on the part of the defendant some of the testimony was evidently based on the particular lot of skins which came in from the dyers at that time and were sold for the same amount that plaintiff agreed to pay. The plaintiff, in view of the Statute of Frauds, must stand on the contract as written which calls for no particular grade or quality of skins. It could, for aught that appears in this record, have been fulfilled by delivery of skins from the southern States which are less valuable than those from the northern States. Doubtless the contract was made with reference to the general average run of skins in this market and if it appeared that that is the manner in which skins are dealt in, the evidence should have been directed to the market value of such skins, and if on the other hand the skins are sorted or graded before they are dealt in then this contract could have been fulfilled by a

delivery of skins of the poorest grade or quality according to the manner in which they are customarily so sorted and graded.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

Clarke, P. J., Scott, Page and Shearn, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.