that object.   Without again seeing Harison, or inquiring as to the result, he obtains from Peck a quitclaim deed.

It seems to have been assumed by the court that the cancellation did not bind Peck.   Ostrander v. Darling, 127 N. Y. 70, 27 N. E. 353.   And the jury were in substance instructed that, if it was the understanding between the parties that the plaintiffs, in case they did not settle with Peck, would. return the money to defendant, then, as the money had not been returned, the plaintiffs could not recover the possession, although they in fact owned the land, and the defendant claimed adversely.   ˙This instruction was, I think, erroneous.   Under any view of the facts, the defendant did not, I think, have any such charge upon the land for the repayment of the ˙money paid by him on the contract as would entitle him to hold possession in case the plaintiffs in fact now own the property.   As we are not able to say that the erroneous instruction did not control the verdict, it follows that, as to the plaintiffs George D. L. Harison and Thomas L. Harison, the judgment must be reversed.

The nonsuit as to the plaintiff Gertrude Harison necessarily followed from the exclusion of the proof offered of the will of Richard M. Harison, one of the original plaintiffs.   The objection to the record offered was that it did not show that the will was ever probated.   This objection seems to be a good one.   Code Civ. Proc. §§ 2629–2633; 1 Whart. Ev. § 66; Thorn v. Shiel, 15 Abb. Prac. (N. S.) 84; King v. King, 39 Hun, 220.   And we are shown nothing to the contrary.

Judgment and order reversed as to the appellants George D. L. Harison and Thomas L. Harison, and new trial granted; costs to abide the event.   Judgment and order affirmed as to appellant Gertrude Harison.   All concur.

---

CONNECTICUT VAL. GRANITE & MINING CO. v. TRUSTEES OF NEW YORK AND BROOKLYN BRIDGE.

(Supreme Court, Appellate Division, Second Department.   June 28, 1898.)

1. CONTRACT—PERFORMANCE—WAIVER OF CONDITIONS.
    A contract to deliver 60,000 granite paving blocks provided for their delivery "either in New York or Brooklyn, as directed by the defendant's engineer"; deliveries to commence within six weeks.   Before that time expired the plaintiff had a large part of the blocks ready for shipment, and requested of the engineer a designation of the place of delivery.   No designation was made.   Held, that the engineer thereby waived the defendant's right to take advantage of the question of time, so long as the engineer did not order deliveries.

2. SAME—ANNULMENT—DAMAGES.
    The contract further provided that if the contractor failed to comply with its terms, and if, in the judgment of the engineer, he was manifestly unable to furnish the blocks as required, the trustees might declare the contract null.   Upon the engineer's report to that effect, the contract was annulled.   Held, in an action for damages, that this provision did not deprive the jury of the right to say whether the engineer had any sufficient justification for his conclusion.

Appeal from trial term, Kings county.

Action by the Connecticut Valley Granite & Mining Company against the trustees of the New York and Brooklyn Bridge.   From a

judgment in favor of plaintiff for $1,020, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James C. Bergen, for appellants.

Paul E. De Fere, for respondent.

WOODWARD, J. On or about the 3d day of April, 1894, the parties to this action entered into a contract in writing whereby the plaintiff undertook to deliver to the defendants, under the direction of their engineer, about 60,000 granite paving blocks, of a given description, at the rate of $82.50 per 1,000. These blocks were to be delivered "either in New York or Brooklyn, as directed by the engineer," and the deliveries were to "commence within six weeks after the date of the contract; the rate of delivery to be subject to the order of the engineer." The contract further provided that:

"It is understood and agreed that if at any time the contractor shall fail to comply with the terms of these specifications, and if, in the judgment of the engineer, he is manifestly unable to furnish the blocks as required, then the trustees may declare his contract null and void, and shall have the right to contract with other parties for the delivery of the blocks; and, if loss occurs to the trustees by this transaction, said contractor shall pay such loss, or it shall be deducted from any money due him under this contract."

The evidence tended to establish that immediately after the signing of this contract the plaintiff entered upon the work of getting out the paving blocks in accordance with the specifications, and that within one month it had succeeded in placing about 20,000 of these blocks upon its docks, ready for shipment, and that this number had been increased to about 40,000 blocks on the 30th day of May. There was evidence tending to establish the fact that the plaintiff, through one of its representatives, had called upon the engineer of the defendants within the six weeks specified in the contract, and had offered to begin the delivery of such blocks, by requesting that the engineer of the defendants should designate where such blocks were to be delivered, and that the engineer had promised to do so, but that he never in fact complied with this request. Subsequent to this request, and after the expiration of the six weeks after the signing of the contract, the engineer of the defendants sent an inspector to the quarries of the plaintiff, at its request, to inspect the paving blocks, some 40,000 in number; and the evidence showed that the inspector looked over the blocks, and to several persons declared them to be of good quality,—the best, or the equal, of any that he had ever seen. The inspector made a report to the engineer of the defendants, the nature of which does not clearly appear from the evidence; and, acting solely upon this report, as the engineer testifies, he advised the defendants to annul the contract, on the grounds that "they had failed to comply with their contract, in not delivering the stone at the time specified, and that I was convinced, in my judgment, that they were not * * * in condition or competent to fulfill their contract." The contract was annulled by the defendants, and the contract for the paving blocks was let to the next lowest bidder, by

whom the blocks were delivered; the defendants paying $95 per 1,000 for the same.   The plaintiff disposed of the blocks on hand at a considerable discount, the market for this particular kind of paving blocks being very dull; and this action was brought for the purpose of recovering the difference between the amount realized and the sum that the defendants had agreed to pay, together with the loss incident to the refusal of the defendants to accept the remaining 20,000 blocks not yet manufactured.   The questions involved were submitted to the jury, under a charge on the part of the trial court to which there were no important exceptions, and resulted in a verdict for the plaintiff for the full amount of its claim.   The defendants put in a counterclaim for the amount of loss growing out of the difference in price between the contract with the plaintiff and that which they were obliged to pay, and this is still urged by the defendants.

We are unable to discover any reason why this judgment should not be sustained.   The jury has found by its verdict that the plaintiff was prepared to deliver a reasonable quantity of these paving blocks within the six weeks allowed by the contract for the commencement of the delivery, that the defendants were notified of this fact, and that the engineer, by neglecting or refusing to designate the point of delivery, had waived the right of the defendants to take any advantage of the question of time, so long as the engineer did not order deliveries.   This conclusion is justified by reason, and is sustained by the authorities.   West v. Newton, 1 Duer, 277; Mayor, etc., of City of New York v. Reilly, 59 Hun, 501, 13 N. Y. Supp. 521; Deeves v. City of New York (Super. N. Y.) 17 N. Y. Supp. 460.   The only material question, then, is whether or not the question of the plaintiff's ability to deliver the stone was one for the jury, or was that power left by the contract exclusively with the engineer of the defendants? Unquestionably, the defendants' engineer was by the terms of the contract made the judge of the ability of the plaintiff to furnish the blocks as required; but this does not, as we understand the law, authorize the engineer to reach this conclusion arbitrarily, nor does it deprive the jury of the right to say whether he had any sufficient justification for the conclusion.   The trial court upon this point charged the jury, "not that the judgment of the engineer may be due to some caprice or some whim, but he must have information upon which to base his judgment that the contractor is manifestly unable, or was manifestly unable, to complete the contract, and to furnish the blocks as required."   This, we believe, fairly stated the law, and the jury have found that the engineer did not have the information necessary to determine that the plaintiff was "manifestly unable to furnish the blocks as required."   So far as appears from the evidence, the plaintiff had a large quantity of cut stone, meeting the requirements of the contract; the defendants, though made aware of this fact, had never designated any point of delivery, as required by their contract; and there was no fact which justified the engineer in concluding that the plaintiff was "manifestly unable to furnish the blocks as required," unless that fact was communicated by the person whom he had designated to make an inspection; and, so far as

the evidence throws any light upon this question, the facts disclosed were not sufficient to justify the conclusion which the engineer is said to have reached, and it was clearly within the province of the jury to reach the verdict now under review. In order to make manifest that the plaintiff was "unable to furnish the blocks as required," it would seem to be important that the defendants, through their engineer, should have required the delivery of the blocks, or a certain portion of them, at some given point. If there had been any failure to meet this demand, either in the number or the quality, there would be a reasonable ground on which to declare the contract void, and it was undoubtedly contemplated that some such condition should arise before such action should be taken. This is the fair and reasonable construction of the contract, taken as a whole.

The judgment and order of the trial court should be affirmed, with costs. All concur.