JULES S. BACHE et al., Appellants, *v.* THE BANKOGRAPH COMPANY, INC., Respondent.

Supreme Court, Appellate Term, First Department, December, 1922.

### Brokers — foreign exchange — when broker's memorandum of purchase binds both parties — Statute of Frauds.

The rule that a broker in goods or merchandise who carries on an independent business as a broker and is not a mere employee of the purchaser is authorized to bind both parties to a transaction by signing a memorandum of purchase in behalf of the buyer, applies to a sale of choses in action.

While the object of the Statute of Frauds is to compel the production of written evidence of a contract against the party sought to be charged thereby, mutuality of obligation is not essential to the validity of the contract so far as its compliance with the statute is concerned and a purchaser may be held notwithstanding the fact that the contract may not be enforcible against the other party.

In an action for damages for breach of a contract under which defendant bought of plaintiff a check for 1,000,000 German marks, the answer besides a general denial pleaded the Statute of Frauds as a defense. It appeared in evidence that the sale was conducted through one K., a foreign exchange broker, who according to the custom of the trade was authorized to sign and deliver the bought and sold notes and bind both parties to the transaction by signing a memorandum of purchase on behalf of the buyer. Defendant's president told K. over the telephone that he wanted to buy 1,000,000 German marks and asked for the rate. K. gave a rate of forty-three and three-fourths and defendant's president said he would take 1,000,000. K. told defendant's president to wait until he ascertained the lowest rate and called up plaintiffs, received the quotation and told defendant's president that the rate quoted was O. K. and that he had bought a 1,000,000 marks' check on Berlin, for the defendant. Defendant's president told K. to have the check drawn to the order of defendant. K. then sent a bought note to defendant and delivered a sold note to plaintiffs which recited that the broker had bought 1,000,000 marks from them for delivery at forty-three and three-fourths, on the order and for the account of the defendant. The transaction having taken place after banking hours, the next morning plaintiffs drew their check on a German bank in Berlin for the marks. Plaintiffs' messenger took the check for the marks and a bill for $4,375 to the office of the defendant but its president refused to accept the same. At the opening of the market on the following morning the marks were sold at thirty-four and one-half. *Held*, that plaintiffs had proved a cause of action against defendant in which all the usual elements of a contract were set out and the plaintiffs' proof of the transaction showing a complete compliance with the Statute of Frauds it was error to dismiss the complaint at the close of plaintiffs' case on the ground that they had failed to prove any cause of action and had also failed to bring the action within the Statute of Frauds, because there was no note or memorandum in writing of the contract signed by a duly authorized agent of the defendant in its behalf or signed by defendant and also upon the ground that no part of the property passed and that no part of the purchase price was paid.

Judgment entered upon the dismissal of the complaint reversed, and a new trial ordered.

APPEAL by plaintiffs from a judgment of the Municipal Court of the city of New York, borough of Manhattan, first district, in favor of the defendant, entered upon the dismissal of the complaint at the close of the plaintiffs' case.

*Cook, Nathan & Lehman (Harold Nathan,* of counsel), for appellant.

*Bondy & Schloss (Eugene L. Bondy,* of counsel), for respondent.

McAVOY, J.   This action is one to recover $925 as damages for breach of contract by which the plaintiffs sold to the defendant and defendant bought from the plaintiffs a check for 1,000,000 German marks.   The defense is a general denial and there is a plea of the Statute of Frauds.   The conduct of the sale was described as follows in the testimony:   One Kahn, who is a foreign exchange broker and has been in the business about fifteen years, was on several occasions during March and April, 1922, called upon by one Lederer, president of the defendant, on the telephone, and quotations on foreign exchange, both marks and francs, were asked for.   On one occasion prior to this one the defendant purchased a check for French francs, which was delivered to him in the form of a banker's check for the French francs.   The check of the banking house to which the order for the French francs had been given was delivered to the defendant in the customary way, and Lederer, the president of the defendant, paid for the check.   On April 24, 1922, Lederer telephoned to Kahn, the foreign exchange broker, that he wanted to buy 1,000,000 German marks and asked for the rate.   Kahn informed him that the rate was forty-three and three-fourths, and Lederer said he would take 1,000,000.   Kahn is not connected in business with the plaintiffs, but transacts his business in behalf of customers with banking houses generally. Kahn told the defendant's officer to wait until he ascertained what the rate for the mark was, so that he might get the lowest rate for the defendant, and Lederer waited on the 'phone while Kahn called up the plaintiffs on another telephone, received the quotation, and told Lederer that the rate quoted was O. K., and that he had bought a 1,000,000 marks' check on Berlin for the defendant. Lederer told Kahn to have the check drawn to the order of the Bankograph Company, Inc., the defendant here.   Kahn then sent a bought note to the defendant and a sold note was delivered to the plaintiffs by him.   The sold note recites that the broker had bought 1,000,000 marks from plaintiffs for delivery at forty-three and three-fourths on the order and for the account of the Bankograph Company, Inc.   The marks were not delivered that afternoon to the defendant, because the transaction took place after banking

Appellate Term, First Department, December, 1922.    [Vol. 120

hours; but the morning after the contract was made the plaintiffs drew their check on a German bank in Berlin for the 1,000,000 marks. Plaintiffs' messenger took the check for the marks and a bill for $4,375 to the office of the defendant. Lederer refused to accept the check. The marks were sold at the opening of the market on the following morning at thirty-four and one-half, losing nine and one-fourth points, which is the basis of the amount of damage.

The complaint was dismissed at the close of plaintiffs' case on the ground that plaintiffs had failed to prove the cause of action alleged, or any cause of action, and had failed to bring the action within the Statute of Frauds, because there was no writing or note or memorandum in writing of the contract signed by a duly authorized agent of the defendant in his behalf or signed by the defendant, and that no part of the property passed and that no part of the purchase price was paid.

Plaintiffs' claim at the trial was that Kahn was the agent of the defendant, that the customer knew that the broker would purchase the marks from bankers, and would receive his commission therefrom, and that the signing of the bought note by the broker, which was delivered to the bankers, was a sufficient compliance with the requirements of the Statute of Frauds. It seems fully established in New York that a broker in goods or merchandise who carries on an independent business as a broker and is not a mere employee of the purchaser, is authorized to bind both parties to a transaction by signing a memorandum of purchase in behalf of the buyer; and this rule doubtless applies to the sale of choses in action besides the sale of commodities. It is obvious here that Kahn was not the plaintiffs' employee, that his duties and the defendant's knowledge of them constituted him a broker, who, according to the custom of the trade, was authorized to sign and deliver the bought and sold notes and thus remove the statutory taint of invalidity of a transaction not reduced to writing signed by the party sought to be charged. The defendant's argument is that it would have no cause of action against Bache & Co., the plaintiffs, if the rate of exchange had gone up between the time of purchase and delivery, and Bache & Co. had refused to comply with the contract to furnish the marks to defendant. Whether this be true or not, mutuality of obligation is not essential to the validity of a contract in so far as its compliance with the Statute of Frauds is concerned, and the purchaser may be held notwithstanding the fact that it may not be enforcible against the other party. If the proposal is in writing, signed by the party to be charged, and contains all the terms of the proposed contract the contract as

against the party signing is good within the statute. Though a contract by reason of its acceptance being verbal may not be enforcible against the party accepting it, such circumstance is no defense to the party signing the same, the object of the statute being to compel the production of written evidence of the terms of the contract against the party sought to be charged. It is not essential to the liability of the party sought to be charged that there be mutuality of obligation, and the fact that the contract may not be enforcible against one party because not subscribed by him is no defense to the other by whom it is subscribed. *Justice v. Lang,* 42 N. Y. 493.

It seems to me that there was a cause of action proved against the defendant in which all the usual elements of a contract were set out, and that the plaintiffs' proof of transaction shows a complete compliance with the Statute of Frauds, and in consequence the judgment should be reversed.

Judgment reversed and a new trial ordered, with thirty dollars costs to the appellants to abide the event.

LEHMAN and WAGNER, JJ., concur.

Judgment reversed.